UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

AUG 1 2 2010

J T NOBLIN, CLERK
BY_____ DEPUTY

|  |  |
|---|---|
| CIRILA BALTAZAR CRUZ and R.J.M.B., by and through her Next Friend, Cirila Baltazar Cruz | ) ) ) ) |
| Plaintiffs | ) ) ) |
| v. | ) ) |
| MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, SINGING RIVER HEALTH SYSTEM D/B/A SINGING RIVER HOSPITAL, and VICKI HAYES, RALPH (MATT) MATHEWS, and ABIGAIL MEDINA, individually, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 3:10cv446 HTW-LRA

## COMPLAINT

### PRELIMINARY STATEMENT

1.      Plaintiffs in this lawsuit are a Mexican immigrant woman, Cirila Baltazar Cruz, and her

minor daughter, R.J.M.B., a U.S. citizen, whose constitutional rights to family integrity were

violated by employees and/or agents of the Mississippi Department of Human Services

("MDHS") and Singing River Hospital ("Singing River").  Plaintiff Baltazar Cruz is a member

of the Chatino indigenous group from southern Mexico and speaks limited Spanish and virtually

no English.  The individual defendants conspired to remove R.J.M.B. from her mother in order to

place the infant child in the custody of a white local attorney couple who were seeking to adopt

and who frequently practiced before the same judge who sanctioned the removal.  In doing so,

the individual Defendants deliberately took advantage of Plaintiff Baltazar Cruz's indigence,

1

inability to speak or understand English, and lack of familiarity with the U.S. legal system in order to attempt to remove R.J.M.B. permanently from her mother.

2.      Two days after Plaintiff Baltazar Cruz gave birth to her daughter, R.J.M.B., at Singing River in Pascagoula, Mississippi, MDHS Defendant Vicki Hayes ("Defendant Hayes") removed R.J.M.B. from her mother's custody and care on the basis of patently and facially unreliable and deliberately false information provided by Singing River "patient advocate" Defendant Abigail Medina ("Defendant Medina"). Defendant Hayes and her supervisor, Defendant Ralph (Matt) Mathews ("Defendant Mathews"), refused to conduct any independent investigation into these obviously flawed allegations before removing R.J.M.B. from her mother's custody. In violation of Plaintiffs' due process rights, Defendants Hayes and Mathews continued to forcibly separate R.J.M.B. from her mother despite their awareness that the original allegations against Plaintiff Baltazar Cruz were false. Defendants Hayes, Mathews, and Medina, in concert with the Youth Court judge and the foster parents, manipulated the child welfare system in an attempt to deny Plaintiffs equal protection of the laws and to effectuate a nonconsensual adoption. Defendants' arbitrary and oppressive actions caused Ms. Baltazar Cruz and her daughter to be separated for over a year, resulting in significant trauma and damage to their familial relationship.

3.      Plaintiffs seek redress for Defendants' unconstitutional actions pursuant to 42 U.S.C. §§ 1981, 1983 and 1985, as well as 42 U.S.C. § 2000d and Mississippi common law.

4.      Undersigned counsel for the Plaintiffs represented Ms. Baltazar Cruz in the Jackson County, Mississippi Youth Court proceedings which resulted in the return of R.J.M.B. to her mother after 12 months of separation. After the final hearing in that matter, the Youth Court judge entered a sweeping "gag" order against all parties and witnesses to the case, prohibiting the disclosure of the facts of the Youth Court case. This order was entered over the strenuous

objection of Ms. Baltazar Cruz, who sought leave to speak truthfully about her own experiences

in the case.  Ms. Baltazar Cruz, on her own behalf and as sole legal custodian of her daughter,

has appealed that order to the Mississippi Supreme Court and contends that, under the

circumstances of that case, the gag order is unconstitutional.  Out of an abundance of caution,

however, the Plaintiffs have redacted various facts in the publicly filed version of this Complaint

and seek, through a separate motion, this Court's determination as to whether various allegations

of this Complaint must be filed under seal.

## JURISDICTION AND VENUE

5.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 (federal question

jurisdiction), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. § 1981a.

6.      Declaratory and injunctive relief are sought under 28 U.S.C. §§ 2201 and 2202.

7.      The Court has supplemental jurisdiction over related state law claims asserted herein

pursuant to 28 U.S.C. § 1367.  Supplemental jurisdiction is appropriate because Plaintiffs' state

law tort claims form part of the same case or controversy as Plaintiffs' federal claims.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside

or may be deemed to reside in this district.

## THE PARTIES

### Plaintiffs

9.      Plaintiff Cirila Baltazar Cruz is a Latina woman of Mexican national origin and a

member of the indigenous Chatino group.  Plaintiff Baltazar Cruz resided in Jackson County,

Mississippi, at the time of the events giving rise to this lawsuit.

10.     Plaintiff R.J.M.B. is a United States citizen and the 21-month old daughter of Plaintiff Baltazar Cruz.  Plaintiff R.J.M.B. resided in Jackson County, Mississippi at the time of the events giving rise to the lawsuit.

11.     Plaintiff Baltazar Cruz has the authority to act as Next Friend for Plaintiff R.J.M.B. pursuant to Rule 17(c) of the Federal Rules of Civil Procedure.

## Defendants

### The MDHS Defendants

12.     The Mississippi Department of Human Services ("MDHS") is an agency of the state of Mississippi.

13.     MDHS receives and uses federal funding in the administration of its programs and activities.

14.     At all times relevant to this action, Vicki Hayes was a case worker employed by the Jackson County office of MDHS.  Defendant Hayes is sued in her individual capacity.

15.     At all times relevant to this action, Defendant Hayes was a "person" within the meaning of 42 U.S.C. §§ 1983 and 1985.

16.     At all times relevant to this action, Defendants Hayes' actions were taken under color of law.

17.     At all times relevant to this action, Ralph (Matt) Mathews was an area social work supervisor employed by the Jackson County Department of Human Services.   Defendant Mathews is sued in his individual capacity.

18.     At all times relevant to this action, Defendant Mathews was a "person" within the meaning of 42 U.S.C. §§ 1983 and 1985.

19.   At all times relevant to this action, Defendant Mathews' actions were taken under color of law.

20.   As Defendant Hayes' supervisor, Defendant Mathews directly participated in the R.J.M.B. case from its earliest stages, by actively taking part in the decision to remove R.J.M.B. from her mother's custody and in the later pretextual investigation of Ms. Baltazar Cruz, and by monitoring and directing Defendant Hayes' work on the case.

*The Singing River Defendants*

21.   Singing River Hospital ("Singing River"), a division of Singing River Health Systems, is a community-owned hospital as defined by MISS. CODE ANN. § 41-13-10 and is a political subdivision of the state of Mississippi.

22.   Singing River receives and uses federal funding in the administration of its activities and programs.

23.   At all times relevant to this action, Abigail Medina was an employee or agent of Singing River Hospital.  Defendant Medina is sued in her individual capacity.

24.   At all times relevant to this action, Defendant Medina was a "person" within the meaning of 42 U.S.C. §§ 1983 and 1985.

25.   At all times relevant to this action, Defendant Medina's actions were taken under color of law.

## STATEMENT OF FACTS

26.   Plaintiff Cirila Baltazar Cruz is an indigenous Mexican immigrant from the state of Oaxaca.  She is a member of the indigenous Chatino community and speaks Chatino as her primary language.

5

27.     Ms. Baltazar Cruz has limited Spanish proficiency and virtually no understanding of

English.  She has completed the equivalent of a first-grade education and is unable to read or

write in any language.

28.     In November 2008, Ms. Baltazar Cruz was living and working in Pascagoula,

Mississippi.  She was pregnant and expecting the birth of her child later that month.

29.     On the morning of November 16, 2008, Ms. Baltazar Cruz began to experience labor

pains while she was at her residence in Pascagoula.  As the pain intensified, she left her home

and summoned police assistance in getting to the hospital.  Shortly after her arrival at Defendant

Singing River, she gave birth to a healthy girl, R.J.M.B..

30.     Ms. Baltazar Cruz remained at Singing River during the night of November 16, 2008.

31.     At some point during the morning of November 17, 2008, a representative from the

Singing River social services department visited Ms. Baltazar Cruz in her hospital room,

accompanied by Defendant Abigail Medina, a Spanish-speaking "patient advocate" and an

employee or agent of Singing River.

32.     The social services department representative and Defendant Medina attempted to speak

with Ms. Baltazar Cruz in Spanish and English.  No Chatino-speaking individual assisted with

interpretation.  Ms. Baltazar Cruz did not fully understand what they were communicating to her.

Ms. Baltazar Cruz told Defendant Medina that she did not understand what Defendant Medina

was saying.  Knowing that Ms. Baltazar Cruz's comprehension was limited, Defendant Medina

used hand gestures and repeated her statements to Ms. Baltazar Cruz multiple times.

33.     Later in the day on November 17, 2008, Defendant Medina and the other Singing River

employee returned to Ms. Baltazar Cruz's room and questioned her about her living situation.

Ms. Baltazar Cruz attempted to explain that she worked at a Chinese restaurant and lived in

6

employer-provided housing.  Defendant Medina asked Ms. Baltazar Cruz where she planned to live when she left the hospital.  Ms. Baltazar Cruz stated that she would return to the apartment in which she had been living.  Defendant Medina told Ms. Baltazar Cruz that she would not be permitted to leave the hospital with her daughter.

34.     Ms. Baltazar Cruz remained at Singing River Hospital during the night of November 17, 2008.

35.     Upon information and belief, Defendant Medina contacted the Jackson County MDHS on the morning of November 18, 2008 and



37.     On the morning or early afternoon of November 18, 2008, representatives from Singing River, including Defendant Medina, visited Ms. Baltazar Cruz in her hospital room. When these representatives arrived, Ms. Baltazar Cruz's second cousin, Esteban Mendez, was present in Ms. Baltazar Cruz's hospital room visiting with her.

38.     Mr. Mendez, who speaks Spanish fluently, told Defendant Medina that Ms. Baltazar Cruz did not speak or understand Spanish well.  Defendant Medina also heard Ms. Baltazar Cruz and Mr. Mendez speaking Chatino, and not Spanish, with each other.  When Mr. Mendez attempted to interpret for Ms. Baltazar Cruz from Chatino into Spanish, Defendant Medina said that she was talking to Ms. Baltazar Cruz, and Mr. Mendez should keep his mouth shut.

39.     Defendant Medina told Mr. Mendez to leave the room so that she and the other individual from Singing River could speak to Ms. Baltazar Cruz. Mr. Mendez offered to stay and assist with Chatino-Spanish interpretation, but eventually he followed Defendant Medina's instructions and stood outside in the hallway.

40.     Once Mr. Mendez was outside, Defendant Medina and the other individual continued to talk with Ms. Baltazar Cruz without the assistance of any Chatino-speaking individual.

41.     Following this conversation, Defendant Medina—outside the presence of Ms. Baltazar Cruz—told Mr. Mendez that Ms. Baltazar Cruz stated she was trading sex for housing and intended to give R.J.M.B. up for adoption. Mr. Mendez was incredulous and told Defendant Medina that he believed Ms. Baltazar Cruz had not understood what Defendant Medina was saying. Defendant Medina insisted that Ms. Baltazar Cruz had understood her completely.

42.     Mr. Mendez then asked Ms. Baltazar Cruz whether she had ever made these statements. Ms. Baltazar Cruz vehemently denied ever having told Defendant Medina that she traded sex for housing or that she wished to give R.J.M.B. up for adoption. Mr. Mendez then told Defendant Medina that Ms. Baltazar Cruz stated that she never made such statements.

43.     At around 12:00 p.m. on November 18, 2008, Defendants Medina and Hayes, and social worker Jessie Bether, who upon information and belief is an employee or agent of Singing River, returned to Ms. Baltazar Cruz's room and reiterated that she could not leave the hospital with her newborn daughter, R.J.M.B.

44.     Around this time, Defendants Medina, Hayes, and/or social worker Bether ordered Mr. Mendez to leave the room again. When he declined, Defendant Hayes and/or social worker Bether threatened to call the police. They also requested to see Mr. Mendez's identification, and proceeded to make a copy of it.

8

45.    A notation on R.J.M.B.'s physician orders from November 18, 2008 stated "mother is not to see infant."

████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

48.    During the afternoon of November 18, 2008, Defendant Medina told Ms. Baltazar Cruz that R.J.M.B. would remain at the hospital until further notice but that Ms. Baltazar Cruz would be discharged that day.  Defendant Medina instructed Ms. Baltazar Cruz and Mr. Mendez to sleep at the Salvation Army shelter in Pascagoula that night.  Defendant Medina stated that if Ms. Baltazar Cruz and Mr. Mendez stayed at the Salvation Army, they would be able to see R.J.M.B. the next morning at Singing River.  Defendant Medina told Ms. Baltazar Cruz and Mr. Mendez that they needed to hurry to get to the Salvation Army shelter because there was limited space remaining.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

51.    During the afternoon of November 18, 2008, Ms. Baltazar Cruz was discharged from Singing River Hospital.  Following Defendant Medina's instructions, Ms. Baltazar Cruz and Mr.

Mendez went to the Salvation Army shelter in Pascagoula in the hope that they would be able to see R.J.M.B. in the morning as Defendant Medina had promised.

52.     At some point on or about November 17, 2008, social worker Jessie Bether contacted the Mississippi Attorney General's Office and alleged that Ms. Baltazar Cruz was an undocumented immigrant.  An investigator from that office told Ms. Bether to report Ms. Baltazar Cruz to federal immigration authorities.

53.     At some point on or about November 17, 2008, Singing River social services representative Nancy Fagan contacted federal immigration authorities to alert them of Ms. Baltazar Cruz's alleged undocumented immigration status.



57.     The summary removal of R.J.M.B. from her mother occurred without notice or opportunity for a hearing ██████████████████████████

███████████████████████████████████████████████

███████  At no time was Ms. Baltazar Cruz advised of the administrative and court proceedings

which removed R.J.M.B. from her legal custody ████████████████████████████████

████████

58.     During the night of November 18, 2008, Ms. Baltazar Cruz and Mr. Mendez slept at the

Salvation Army Shelter in Pascagoula as Defendant Medina had instructed.  Ms. Baltazar Cruz

suffered great anguish during the night at the Salvation Army shelter, as she experienced post-

partum bleeding, was unable to breastfeed her newborn daughter, and was distraught about her

separation from R.J.M.B.

59.     During the evening at the Salvation Army shelter, Mr. Mendez called Defendant Medina

several times on the cell phone number she had given him, but she did not answer.  He left a

message asking Defendant Medina to call him back.  She never returned the call.

60.     On the morning of November 19, 2008, Ms. Baltazar Cruz and Mr. Mendez went to

Singing River to seek information about R.J.M.B.  When Ms. Baltazar Cruz and Mr. Mendez

arrived at Singing River, they were told that R.J.M.B. was no longer there.

61.     Unbeknownst to Ms. Baltazar Cruz, Douglas L. Tynes, Jr. and Wendy Tynes had picked

up R.J.M.B. from Singing River that morning and taken her to their home.

62.     At Singing River, Ms. Baltazar Cruz and Mr. Mendez tried unsuccessfully to obtain

information about R.J.M.B.'s whereabouts.  They looked for Defendant Medina but were

initially unable to find her.  Instead, a Singing River employee handed them contact information

for Defendant Hayes.  Later, they encountered Defendant Medina, who denied knowledge of

R.J.M.B.'s whereabouts and told Mr. Mendez to contact Defendant Hayes.

11

63.   None of the Defendants informed Ms. Baltazar Cruz about the court hearing regarding R.J.M.B.'s custody scheduled for the afternoon of November 19, 2008.

64.   In their frantic attempts to get information about R.J.M.B.'s whereabouts, Ms. Baltazar Cruz and Mr. Mendez sought assistance from a Spanish and English speaking individual who worked at a clinic where Ms. Baltazar Cruz had received prenatal care.  On behalf of Ms. Baltazar Cruz, a woman who worked at the clinic spoke to Defendant Hayes over the telephone. Defendant Hayes informed the clinic worker that a hearing would take place at the Jackson County Youth Court that afternoon.  The clinic worker located Elizabeth Bjork, an individual who spoke both English and Spanish, to accompany Ms. Baltazar Cruz and Mr. Mendez to the hearing.

65.   Ms. Baltazar Cruz attended the hearing at the Jackson County Youth Court during the afternoon of November 19, 2008.  ███████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████



79.     Despite being on notice of Ms. Baltazar Cruz's limited ability to communicate in Spanish within days of taking custody of R.J.M.B., no one at MDHS made any effort to locate an interpreter in Ms. Baltazar Cruz's native language during this "investigatory" phase of the case.

80.     Upon information and belief, Defendants Hayes and Mathews failed to ask Ms. Baltazar

Cruz any questions regarding her plans to care for R.J.M.B.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████

82.     Upon information and belief, Defendants Hayes and Mathews conducted no additional

investigation of Ms. Baltazar Cruz's living situation.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

85.     Ms. Baltazar Cruz did not purchase formula because she intended to breastfeed R.J.M.B.,

as was the practice common to her culture.

86.    In Chatino culture, mothers co-sleep with their children; thus, Ms. Baltazar Cruz had no need for a crib.

87.    Ms. Baltazar Cruz had purchased other supplies for R.J.M.B., including clothing. These items were in the closet of her room when Defendants Hayes and Mathews visited. Defendants Hayes and Mathews did not inquire as to whether Ms. Baltazar Cruz had purchased any of these items for her child, nor did any of the other individuals present for the visit make these inquiries.

88.    Upon information and belief, MDHS made no attempt to contact Ms. Baltazar Cruz during December 2008 to ask her about the allegations and purported factual findings which formed the basis for the removal ███████████████. R.J.M.B. continued to live with the Tynes, ████████████████████████████████████████

89.    When MDHS takes custody of a child, it is required to give first priority in placement to the child's relatives before placing her with non-relative foster parents. See Miss. Code Ann. § 43-15-13(7). Upon information and belief, MDHS made no attempt to identify or contact any relatives of R.J.M.B. to determine whether they could care for R.J.M.B.

90.    MDHS internal policy requires caseworkers to develop a visitation plan allowing a child in foster care to visit with her parent(s) and for contact between a parent and a child in foster care to occur within the first week after the agency places a child in foster care. See Child and Family Services Review, Statewide Assessment 2010, at 75 (Miss. Department of Human Services, Division of Family and Children's Services), available at http://www.mdhs.state.ms.us/pdfs/fcs_cfspreview.pdf) ("MDHS Statewide Assessment").

91.    While custody of R.J.M.B. remained with MDHS in December 2008, Ms. Baltazar Cruz was unable to see her daughter, in spite of her efforts to do so. ███████████████████ ████████████████████████████████████████████████████

16

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████

92.     Upon information and belief, MDHS made no attempt to contact Ms. Baltazar Cruz

during January 2009.  R.J.M.B. continued to live with the Tynes, █████████████████

██████████████████████████

93.     During January 2009, while custody of R.J.M.B. remained with MDHS, Defendants

Hayes and Mathews made no effort to allow Ms. Baltazar Cruz to see her child.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

96.     During February 2009, R.J.M.B. continued to live with the Tynes, ████████████████

██████████████████████████████████████

97.     On or about February 25, 2009, Ms. Baltazar Cruz saw R.J.M.B. for the first time since

MDHS separated them at the hospital over three months earlier, in a visit held at the Youth Court

visitation room.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

99.     Between November 18, 2008 and on or about May 5, 2009, Ms. Baltazar Cruz saw

R.J.M.B. just four times, for approximately one hour each visit. ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ Ms.

Baltazar Cruz was permitted to visit with her daughter only in a small room at the Jackson

County Youth Court or at a nearby building.  Ms. Baltazar Cruz was not permitted to conduct

these visits without the presence of Douglas L. Tynes, Jr. and Wendy Tynes, who attended each

visit between Ms. Baltazar Cruz and her daughter.  None of the visits took place in a home or

home-like setting.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

102.     MDHS internal regulations require the case worker assigned to a child's case to develop

an Individual Service Plan (ISP), which it describes as a "formal mechanism to assess all needs

of children and families, to develop plans to meet the identified needs and to monitor provision

of services and success of plans," within 30 days of opening a case.  MDHS Statewide

Assessment, at 76-77.  MDHS must also conduct a "Family Team Meeting," which the agency

describes as required during "critical decision making points in the case, especially prior to

entering custody . . . ," within 30 days of child entering agency custody.  Id. at 80, 146.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████

106.    Upon information and belief, MDHS made no attempt to locate a Chatino interpreter to

assist with its interactions with Ms. Baltazar Cruz from November 18, 2008 through at least

September 2009.

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

110.    Ms. Baltazar Cruz's attorney appealed the order from the May 13, 2009 hearing to the

Mississippi Supreme Court.

111.    Upon information and belief, from November 2008 through at least May 2009,

Defendants Hayes and Mathews, Judge Sigalas, the Tynes, and/or guardian ad litem Terry Holtz,

engaged in multiple discussions outside the presence and without the knowledge of Ms. Baltazar

Cruz and her attorney about, inter alia, the custody proceedings involving Ms. Baltazar Cruz and

R.J.M.B., the terms of any visitation permitted for Ms. Baltazar Cruz and her daughter, and Ms.

Baltazar Cruz's appeal of the Youth Court's May 13, 2009 order.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

113.    Ms. Baltazar Cruz was prohibited from seeing her daughter during the remainder of May,

as well as for the entirety of June, July, August, and September of 2009.  During this time,

R.J.M.B. remained in the legal custody of MDHS and in the physical custody of Douglas L.

Tynes, Jr. and Wendy Tynes.

114.    In August 2009, the United States Department of Health and Human Services (HHS)

Office for Civil Rights (OCR) and the HHS Administration for Children and Families (ACF)

began investigations into MDHS' handling of R.J.M.B.'s case.  OCR also opened an

investigation into Defendant Singing River's actions in the matter.



117.    Until federal authorities began investigating MDHS for possible civil rights violations as well as violations of federal law governing foster care subsidies, MDHS made no efforts to reunify Ms. Baltazar Cruz and R.J.M.B.

118.    On November 19, 2009, Ms. Baltazar Cruz regained physical custody of R.J.M.B.

120.    Due to Defendants Hayes', Mathews' and Medina's unconstitutional actions, Ms. Baltazar Cruz lost custody of R.J.M.B. during the first year of her daughter's life and was only able to see R.J.M.B. four times from November 18, 2008 through October 2009.

121.    Defendants Hayes, Mathews, and Medina conspired with Judge Sigalas, guardian ad litem Holtz, and the Tynes to deny Ms. Baltazar Cruz and R.J.M.B. their constitutional rights to family integrity because of Ms. Baltazar Cruz's race and/or national origin by unlawfully removing R.J.M.B. from her mother's custody just two days after birth.  Defendants Hayes' and Mathews' arbitrary and egregious conduct substantially interfered with Plaintiffs' constitutionally-protected right to family integrity.

122.    As a direct result of Defendants' unconstitutional actions which separated her from her

daughter for over a year, Plaintiff Baltazar Cruz suffered tremendous mental anguish and serious

physical problems.

123.    As a direct result of Defendants' unconstitutional actions which separated her from her

mother during the first year of her life, Plaintiff R.J.M.B. suffered substantial damages.

124.    Due to state actors' unconstitutional interference into Plaintiffs' family relationship, Ms.

Baltazar Cruz and her daughter R.J.M.B. had no opportunity to bond during the formative first

year of R.J.M.B.'s life.  Plaintiff Baltazar Cruz was deprived of the chance to see her daughter

grow her first tooth, learn to crawl, and utter her first words.  For the first year of her life,

Plaintiff R.J.M.B. was denied the chance to know her real family and their language and culture,

to be soothed and fed by her mother, and to recognize her mother's voice and touch.  Plaintiff

Baltazar Cruz was unable to breastfeed R.J.M.B., to comfort her when she was sick or distressed,

to sing her to sleep, and to watch her grow from an infant to a toddler.  ███████████

████████████████████████████████████████████████████

████████████████████████████████████████

Plaintiff Baltazar Cruz and Plaintiff R.J.M.B. experienced the profound psychological harm of

separation as a result of Defendants' unconstitutional actions.

## CLAIMS FOR RELIEF

### COUNT I

### 42 U.S.C. § 1983 CLAIMS ARISING FROM VIOLATIONS OF AND CONSPIRACY TO VIOLATE PLAINTIFFS' FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHTS (DEFENDANTS HAYES, MATHEWS, AND MEDINA)

125.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding

paragraphs as if set forth herein.

22

126.     Plaintiffs assert these claims pursuant to 42 U.S.C. § 1983 against Defendants Hayes,

Mathews, and Medina according to the specific parameters detailed below.

127.     Defendants Hayes', Mathews', and Medina's actions occurred under color of state law

for the purposes of 42 U.S.C. § 1983.

128.     Plaintiff Baltazar Cruz has a constitutionally-protected liberty interest in the care,

companionship, upbringing and nurture of her child.  Plaintiff R.J.M.B. enjoys a parallel liberty

interest in being raised and nurtured by her biological mother.

129.     Defendants Hayes, Mathews, and Medina willfully, deliberately, and without

justification, violated Plaintiffs' clearly established Fourteenth Amendment substantive due

process right to family integrity.  Defendants' actions subjected Plaintiffs to egregious, arbitrary,

and oppressive governmental interference with their most basic constitutional right to remain

together as a family without coercive intrusion by state actors.  Defendants' actions in forcibly

separating Ms. Baltazar Cruz and R.J.M.B. for over a year shock the conscience.

130.     As set forth in the preceding paragraphs, Defendants Hayes, Mathews, and Medina

deprived Plaintiffs of their constitutional right to family integrity by, inter alia, separating Ms.

Baltazar Cruz and her daughter or causing them to be separated on the basis of obviously

unreliable and deliberately false information.

131.     Defendant Medina's fabricated allegations and willful misrepresentations to MDHS set in

motion a chain of events that she knew or reasonably should have known would lead to the

deprivation of Plaintiffs' substantive due process rights to family integrity.  Defendant Medina's

reporting of known falsehoods to MDHS, which initiated unjustified intervention into Plaintiffs'

family life, was arbitrary and egregious.

132.     Defendants Hayes and Mathews deprived Plaintiffs of their constitutional right to family integrity by failing to conduct any independent investigation of the basis for the Singing River referral to MDHS before they sought a custody order removing R.J.M.B. from her mother's custody.

133.     Defendants Hayes and Mathews further deprived Plaintiffs of their constitutional right to family integrity by willfully or recklessly misrepresenting to the Jackson County Youth Court the facts as reported by Defendant Medina in seeking a custody order.  Defendants Hayes' and Mathews' decision not to conduct any independent investigation into Defendant Medina's allegations was objectively unreasonable.

134.     Defendants Hayes and Mathews continued to deprive Plaintiffs of their substantive due process right to family integrity by failing to take any action to restore custody of R.J.M.B. to her mother despite their awareness that the initial removal of R.J.M.B. from Ms. Baltazar Cruz's custody was based on information known to be false.

135.     Rather than taking corrective action to remedy their initial errors in separating newborn R.J.M.B. from her mother, Defendants Hayes and Mathews continued to violate Plaintiffs' substantive due process rights through, inter alia, their willful disregard of Ms. Baltazar Cruz's compelling and constitutionally-protected interest in raising her daughter in accordance with her personal and cultural beliefs and practices and in her native language, their utter refusal to make efforts to reunite mother and child, and their failure to follow applicable MDHS statutes, regulations, and internal policies.

136.     Defendants Hayes and Mathews further violated Plaintiffs' substantive due process rights to family integrity by seeking to terminate Plaintiff Baltazar Cruz's parental rights to R.J.M.B. permanently and to ensure that the Tynes could adopt R.J.M.B.

137.     Defendants Hayes, Mathews, and Medina willfully and maliciously conspired with Judge

Sharon Sigalas, Douglas L. Tynes, Jr. and Wendy Tynes, and/or guardian ad litem Terry Holtz to

deprive Plaintiffs of their Fourteenth Amendment substantive due process rights.  Individual

Defendants conspired with Judge Sigalas to transfer custody of R.J.M.B. to the Tynes directly

upon the child's discharge from Singing River, knowing that the Tynes sought to adopt and

intending to facilitate their potential adoption by depriving Plaintiffs of their substantive due

process rights.  Individual Defendants conspired with Judge Sigalas, the Tynes, and guardian ad

litem Holtz to cause and perpetuate the separation of R.J.M.B. from her mother despite their

knowledge that the allegations against Plaintiff Baltazar Cruz were false.

138.     Defendants Hayes and Mathews, along with Judge Sigalas, the Tynes, and guardian ad

litem Terry Holtz conspired to frustrate Plaintiff Baltazar Cruz's attempts to regain custody of

her baby daughter and thus to deprive her of her constitutional rights by, inter alia, severely

restricting Plaintiff Baltazar Cruz's ability to have any contact with her daughter during the first

months of the child's life, refusing to provide access to language interpretation in Ms. Baltazar

Cruz's interactions with MDHS or the court, exchanging multiple communications regarding

Ms. Baltazar Cruz and her parental rights outside of her presence and without her knowledge,

and seeking to terminate Plaintiff Baltazar Cruz's parental rights permanently to free R.J.M.B.

for adoption by the Tynes, a white family.  These actions were motivated by an impermissible

bias against Ms. Baltazar Cruz due to her status as a Mexican woman of indigenous descent.

Defendants furthered the goals of Judge Sigalas and the Tynes to effectuate a forced, permanent

transfer of custody of R.J.M.B. from Ms. Baltazar Cruz to the Tynes.

139.     Defendants Hayes', Mathews', and Medina's actions severely subverted the integrity of

Plaintiffs' family relationship and caused Plaintiff R.J.M.B. to be separated from her natural

mother from the time she was two days old until after her first birthday, and caused Plaintiff

Baltazar Cruz to miss the first year of her daughter's life.

## COUNT II

### <u>42 U.S.C. § 1983 CLAIMS ARISING FROM VIOLATIONS OF AND CONSPIRACY TO VIOLATE PLAINTIFFS' FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS RIGHTS<br>(DEFENDANTS HAYES, MATHEWS, AND MEDINA)</u>

140.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding

paragraphs as if set forth herein.

141.    Defendants Hayes, Mathews, and Medina deprived Plaintiffs of their rights to procedural

due process by subjecting Ms. Baltazar Cruz to patently unfair procedures—or by failing to

provide any procedural protections whatsoever—before removing R.J.M.B. from her mother's

custody.

142.    Plaintiffs' constitutionally-protected liberty interest in maintaining their family

relationship requires that the state provide fundamentally fair procedures when it seeks to disrupt

this relationship by taking custody of a child and placing her in the custody of strangers.

143.    By deliberately submitting false information to MDHS and by maliciously initiating an

unfounded child welfare investigation, Defendant Medina deprived Plaintiffs of their Fourteenth

Amendment procedural due process rights.  Defendant Medina acted maliciously to separate Ms.

Baltazar Cruz and her newborn daughter by intentionally reporting fabricated allegations to

MDHS.

144.    Defendant Medina's deliberate reporting of known falsehoods to MDHS set in motion a

chain of events that she knew or reasonably should have known would lead to the deprivation of

Plaintiffs' Fourteenth Amendment procedural due process rights.

145.    Defendants Hayes and Mathews deprived Plaintiffs of their Fourteenth Amendment rights to procedural due process by, inter alia, failing to investigate any of the allegations that Defendant Medina leveled against Ms. Baltazar Cruz and by deliberately or recklessly reporting false statements of neglect when seeking an ex parte custody order from the Jackson County Youth Court.  Defendants Hayes and Mathews knew that no exigent circumstances existed that would have justified their efforts to initiate court intervention to remove R.J.M.B. from her mother's custody without a pre-deprivation adversarial hearing, yet they maliciously denied Plaintiff Baltazar Cruz her right to be heard to contest the false accusations leveled against her.

146.    Defendants Hayes and Mathews further deprived Plaintiffs of their Fourteenth Amendment procedural due process rights by refusing to provide adequate language interpretation during the investigatory stages of the case.  Upon information and belief, Defendants Hayes and Mathews also deliberately failed to inform Ms. Baltazar Cruz of the November 19, 2008 hearing, with the intent of causing the hearing to proceed without Ms. Baltazar Cruz's presence.

147.    Defendants Hayes and Mathews continued to violate Plaintiffs' procedural due process rights after taking custody of R.J.M.B. by failing to provide adequate language interpretation to communicate with Ms. Baltazar Cruz and by failing almost entirely to communicate with Ms. Baltazar Cruz during a period of approximately ten months after they took custody of her newborn daughter, thus depriving Ms. Baltazar Cruz of her right to be heard to challenge her continued separation from R.J.M.B.

148.    Defendants Hayes, Mathews, and Medina willfully and maliciously conspired with Judge Sharon Sigalas, Douglas L. Tynes, Jr. and Wendy Tynes, and/or guardian ad litem Terry Holtz to deprive Plaintiffs of their Fourteenth Amendment procedural due process rights when faced with

27

the state-initiated destruction of their family by commencing and pursuing an unfounded child

welfare investigation, forcibly separating Plaintiff Baltazar Cruz from her newborn daughter on

the basis of fabricated allegations, refusing to investigate the allegations against Plaintiff

Baltazar Cruz before removing R.J.M.B. from her custody, and ignoring evidence that the

triggering allegations were false and unfounded.

149.    Defendants' actions resulted in substantial damage to Plaintiffs' constitutionally-

protected family relationship.

## COUNT III

### 42 U.S.C. § 1983 CLAIMS ARISING FROM VIOLATIONS OF AND CONSPIRACY TO VIOLATE PLAINTIFF R.J.M.B.'s FOURTH AMENDMENT RIGHTS (DEFENDANTS HAYES, MATHEWS, AND MEDINA)

150.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding

paragraphs as if set forth herein.

151.    Defendants Hayes, Mathews, and Medina deprived Plaintiff R.J.M.B. of her clearly-

established Fourth Amendment right to be free from unreasonable seizure when they prevented

Plaintiff Baltazar Cruz from taking her newborn daughter home from the hospital in the absence

of emergency circumstances warranting removal of R.J.M.B. from her mother's custody.

152.    Defendant Medina deprived Plaintiff R.J.M.B. of her Fourth Amendment right to be free

from unreasonable seizure by reporting fabricated allegations regarding Ms. Baltazar Cruz to

MDHS and by misrepresenting and omitting material facts when she contacted MDHS to report

"neglect" of two-day old R.J.M.B.

153.    Defendant Medina's deliberate reporting of known falsehoods to MDHS set in motion a

chain of events that she knew or reasonably should have known would lead to the

unconstitutional seizure of Plaintiff R.J.M.B. by the state.  Deliberately manipulating Ms.

28

Baltazar Cruz's lack of familiarity with the U.S. legal system, illiteracy, and lack of English language proficiency, Defendant Medina maliciously initiated MDHS interference into Plaintiffs' constitutionally-protected private family life and violated Plaintiff R.J.M.B.'s Fourth Amendment rights.

154.    Defendants Hayes and Mathews had no reasonable cause to believe that R.J.M.B. was in imminent danger but nonetheless sought and received a custody order from the Jackson County Youth Court by deliberately or recklessly misrepresenting and omitting pertinent information regarding Ms. Baltazar Cruz's home life.  Defendants Hayes' and Mathews' deliberate reporting of falsehoods or reckless disregard for the truth violated Plaintiff R.J.M.B.'s right to be free from unreasonable seizure.

155.    Defendants Hayes, Mathews, and Medina willfully and maliciously conspired to deprive Plaintiff R.J.M.B. of her Fourth Amendment right to be free from unreasonable seizure.

156.    The unconstitutional seizure of Plaintiff R.J.M.B. unreasonably interfered with and caused substantial damage to Plaintiffs' constitutionally-protected family relationship.

### COUNT IV

### 42 U.S.C. § 1983 CLAIMS ARISING FROM VIOLATIONS OF PLAINTIFFS' FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAWS (DEFENDANTS HAYES, MATHEWS, AND MEDINA)

157.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

158.    On the basis of Plaintiffs' Latino, Hispanic, and/or indigenous racial background and Ms. Baltazar Cruz's non-American national origin, Defendants Hayes, Mathews, and Medina deprived Plaintiffs of their clearly-established right to equal protection of the laws.  Defendants Hayes, Mathews, and Medina subjected Plaintiffs to different treatment than that received by

similarly situated individuals.  The different and inferior treatment, included, inter alia, forcibly

separating Ms. Baltazar Cruz and her daughter two days after birth for reasons related to Ms.

Baltazar Cruz's race, color, and/or national origin and seeking to terminate Ms. Baltazar Cruz's

parental rights permanently and hastily so that R.J.M.B. could be raised with the white couple

with whom she had been placed.

159.    Based on animus against and stereotypical perceptions of Ms. Baltazar Cruz based on her

race, color, and/or national origin, Defendant Medina willfully or recklessly initiated MDHS

interference into Ms. Baltazar Cruz and R.J.M.B.'s protected family relationship in a

discriminatory manner.  Defendant Medina discriminatorily fabricated and reported allegations

against Plaintiff Baltazar Cruz to MDHS with the intent and effect of triggering destructive state

interference into Plaintiff Baltazar Cruz's family life.  Defendant Medina selected her course of

action at least in part for the purpose of causing an adverse effect on Plaintiff Baltazar Cruz

because of her status as a Mexican woman of indigenous descent.

160.    Defendants Hayes and Mathews deprived Plaintiffs of their right to equal protection of

the laws by denying Ms. Baltazar Cruz custody of her daughter for reasons grounded in

discriminatory perceptions of her language and cultural practices.  Rather than seeking less

drastic alternatives to abrupt state custody, Defendants Hayes and Mathews removed R.J.M.B.

immediately from her mother's custody and care.  Defendants Hayes and Mathews further

refused to seek placement of R.J.M.B. with a relative, preferring instead to allow a white couple

unrelated to R.J.M.B. to maintain custody of her.  Defendants Hayes' and Mathews' actions were

motivated by discriminatory animus against Ms. Baltazar Cruz as a Mexican woman of

indigenous descent.

161.    Defendants Hayes and Mathews further deprived Plaintiffs of their equal protection rights by failing to take any steps or provide services to facilitate reunification that would have been provided to non-Latina and/or non-Mexican mothers.

162.    Defendants Hayes and Mathews further deprived Plaintiffs of their equal protection rights by seeking to terminate Ms. Baltazar Cruz's parental rights permanently and make R.J.M.B. available for adoption, actions that would not have been taken against non-Latina and/or non-Mexican mothers in like circumstances.

163.    Defendants Hayes' and Mathews' failure to take any action to return R.J.M.B. to the constitutionally-protected custody of her natural mother was grounded in part in their desire to see R.J.M.B. adopted by a white family, whom they viewed as superior guardians compared to R.J.M.B.'s natural mother. This unequal treatment stemmed from a discriminatory intent evidenced by, inter alia, Defendants Hayes' and Mathews' insistence that Ms. Baltazar Cruz learn English and forego her constitutionally-protected rights to raise her daughter to speak Chatino and in accordance with her cultural practices.

**COUNT V**

**42 U.S.C. § 1983 CLAIMS ARISING FROM VIOLATIONS OF AND CONSPIRACY TO VIOLATE 42 U.S.C. § 1981 UNDER COLOR OF LAW (DEFENDANTS HAYES AND MATHEWS)**

164.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

165.    As set forth supra, Defendants Hayes and Mathews willfully and maliciously conspired with Judge Sharon Sigalas, Douglas L. Tynes, Jr. and Wendy Tynes, and/or guardian ad litem Terry Holtz to deprive Plaintiff Cirila Baltazar Cruz of her right to attend and to meaningfully participate in the proceedings through which she was separated from R.J.M.B.

166.    Defendants Hayes and Mathews were motivated by animus against Plaintiffs based on

Plaintiffs' race and/or national origin when they conspired to deprive Plaintiffs of their rights.

167.    In conspiring and taking the actions described supra, Defendants Hayes and Mathews

acted to deprive Plaintiff Baltazar Cruz of her rights under 42 U.S.C. § 1981 to be a party, to

give evidence, and to the full and equal benefit of all laws and proceedings for the security of

persons and property as is enjoyed by white citizens.

168.    Defendants Hayes and Mathews knowingly, willfully, maliciously, intentionally, and

without justification acted to deprive Plaintiffs of their rights.

169.    As a direct result of Defendants Hayes and Mathews' actions, Plaintiffs were deprived of

their right to a familial relationship for over a year and suffered substantial damages.

## COUNT VI

### VIOLATIONS OF 42 U.S.C. § 1985(3)
### (DEFENDANTS HAYES, MATHEWS, AND MEDINA)

170.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding

paragraphs as if set forth herein.

171.    Defendants Hayes, Mathews, and Medina, in collaboration with Judge Sigalas, Douglas

L. Tynes, Jr., and Wendy Tynes, and/or guardian ad litem conspired, agreed, planned,

coordinated, and acted for the purpose of depriving Plaintiffs of their equal protection rights

including, inter alia, their right to be free from arbitrary, egregious, and oppressive interference

with their protected family relationship, their right to be provided with fundamentally fair

procedures when faced with the disruption of their family relationships, and Plaintiff R.J.M.B.'s

right under the Fourth Amendment to the United States Constitution to be free from

unreasonable seizures.

32

172.    Defendants Hayes, Mathews, and Medina were motivated by animus against Plaintiffs

based on Plaintiffs' race and/or national origin when they conspired to deprive Plaintiffs of their

rights.

173.    Defendants Hayes, Mathews, and Medina knowingly, willfully, maliciously,

intentionally, and without justification acted to deprive Plaintiffs of their rights.

174.    As a direct result of Defendants Hayes', Mathews', and Medina's actions, Plaintiffs were

deprived of their right to a familial relationship for over a year and suffered substantial damages.

## COUNT VII

### VIOLATIONS OF 42 U.S.C. § 2000d *et seq.*
### (DEFENDANTS MISSISSIPPI DEPARTMENT OF HUMAN SERVICES AND SINGING
### RIVER HOSPITAL)

175.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding

paragraphs as if set forth herein.

176.    Defendants MDHS and Singing River, at all times relevant to this Complaint, received

federal funding in the administration of their activities, services, and programs.

177.    As recipients of federal financial assistance, Defendants MDHS and Singing River were

at all relevant times bound by the requirements of Title VI of the Civil Rights Act of 1964, 42

U.S.C. § 2000d, which prohibits excluding, denying, or subjecting any person to discrimination

in activities or programs based on such person's race, color, or national origin.

178.    As set forth supra, Defendant MDHS violated Title VI by intentionally excluding

Plaintiffs from—and denying and discriminating against Plaintiffs with respect to—MDHS

procedures, services, and activities based on Plaintiffs' Latino, Hispanic, and/or indigenous

racial background and non-American national origin.

179.   MDHS violated Title VI by, inter alia: securing the summary removal of Plaintiff R.J.M.B. from Plaintiff Baltazar Cruz based on animus against non-Americans and indigenous Latinos like Plaintiff; refusing to notify Plaintiff Baltazar Cruz and denying Ms. Baltazar Cruz access to critical hearings and other available processes and procedures which might allow her to regain custody of her daughter; reporting Ms. Baltazar Cruz to immigration authorities in an attempt to separate her from R.J.M.B.; denying Ms. Baltazar Cruz access to interpretation services which would have enabled her to understand and participate in the processes to which she and her daughter were subjected; denying Ms. Baltazar Cruz access to the visitation and reunification processes and programs afforded to American-born, non-indigenous, and non-Latino parents under MDHS supervision; and moving to terminate Ms. Baltazar Cruz's parental rights based on animus against non-Americans and indigenous Latinos like Plaintiff.

180.   As set forth supra, Defendant Singing River violated Title VI by intentionally excluding Plaintiffs from—and denying, and discriminating against Plaintiffs with respect to—Singing River procedures, services, and activities based on Plaintiffs' Latino, Hispanic, and/or indigenous racial background and non-American national origin. Specifically, Singing River violated Title VI by, inter alia: conspiring with MDHS to effectuate the discriminatory removal of R.J.M.B. from Ms. Baltazar Cruz; reporting Ms. Baltazar Cruz to immigration authorities in an attempt to separate her from R.J.M.B.; denying Ms. Baltazar Cruz access to interpretation services which would have enabled her to understand and participate in the processes to which she and her daughter were subjected; and denying Ms. Baltazar Cruz and R.J.M.B. access to services typically provided American-born, non-indigenous, and non-Latino maternity ward patients and infants.

181.   As a direct result of Defendants' actions, Plaintiffs were deprived of family relationship for a period of over a year and suffered substantial damages.

## COUNT VIII
## MALICIOUS PROSECUTION OF PLAINTIFF BALTAZAR CRUZ
## (DEFENDANTS MEDINA, HAYES, AND MATHEWS)

182.   Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs as if set forth herein.

183.   Defendants Medina, Hayes, and Mathews acted maliciously and in the absence of probable cause to commence a Youth Court proceeding involving R.J.M.B. and against Plaintiff Baltazar Cruz.

184.   The proceeding terminated with a ruling in Plaintiff Baltazar Cruz's favor, resulting in the custody of R.J.M.B. being returned to Plaintiff Baltazar Cruz.

185.   As a result of the maliciously-instituted proceedings, Plaintiffs Baltazar Cruz and R.J.M.B. were separated by the state for over a year and suffered substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that there be judgment rendered herein in favor of Plaintiffs and against Defendants to the fullest extent permitted by law, including:

a.   Reasonable damages to compensate Plaintiffs for the emotional distress suffered as a result of Defendants' unconstitutional activities;

b.   Punitive damages in an amount to be determined at trial;

c.   Appropriate injunctive and declaratory relief;

d.   Court costs, including discretionary costs;

e.   An award of reasonable attorneys' fees;

f.   Such other relief as the Court may deem appropriate.

Respectfully submitted,

Vanessa Carroll
Mississippi Bar No. 102736
Southern Poverty Law Center
921 N. President St.
Jackson, MS 39202
Telephone: (601) 948-8882
Facsimile: (601) 948-8885
vcarroll@splcenter.org

Michelle R. Lapointe
Georgia Bar No. 007080 (*Pro Hac Vice* application pending)
Kristi L. Graunke
Georgia Bar No. 305653 (*Pro Hac Vice* application pending)
Daniel Werner
Georgia Bar No. 422070 (*Pro Hac Vice* application pending)
Immigrant Justice Project, Southern Poverty Law Center
233 Peachtree St. NE, Suite 2150
Atlanta, GA 30303
Telephone: (404) 521-6700
Facsimile: (404) 221-5857
michelle.lapointe@splcenter.org
kristi.graunke@splcenter.org
daniel.werner@splcenter.org

Morris Dees
Alabama Bar No. ASB-7003-E50M (*Pro Hac Vice* application pending)
Mary C. Bauer
Alabama Bar No. ASB-1181-R76B (*Pro Hac Vice* application pending)
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36104
Telephone: (334) 856-8200
Facsimile: (334) 956-8481
jbruno@splcenter.org
mary.bauer@splcenter.org